[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR TEMPORARY ALIMONY AND CHILD SUPPORT CODED NO. 121 AND DEFENDANT'S MOTION FOR SUPPORT CODED NO. 122
The plaintiff has filed a motion for temporary alimony and support coded No. 121, and the defendant has filed a motion for temporary support coded No. 122. By court order entered August 25, 1997, any orders entered regarding the above motions are to be retroactive to August 25, 1997. Some of the facts that give rise to this motion are not in dispute.
On June 2, 1997, the parties entered into a stipulation coded No. 120 that was approved by the court on July 17, 1997. The stipulation in question included an agreement between the parties that they would have joint, shared, legal and physical custody of the two minor children. CT Page 2400
In 1993, the plaintiff and the defendant started a sales promotion business together by the name of Market Works, Inc. The defendant handled the sales part of the business and client contact, and the plaintiff handled all of the remaining aspects of the business. The plaintiff testified that he did not take $40,000 from the business. On November 1, 1996, he withdrew $40,000 from the business to pay down a loan with a local bank, which loan was made by Market Works, Inc. In addition to the $40,000, the plaintiff also withdrew from Market Works, Inc. in January, 1997, without conferring with the defendant, approximately $10,000 as salary. The $40,000 withdrawal was made without the defendant's consent.
The plaintiff is forty-six years old and in excellent health. The plaintiff has a bachelor degree in music education and a master's degree in music. Between 1982 and 1986, he sold some real estate and managed real estate. He also an opera singer
At the end of January, 1997 or early February, 1997, the plaintiff purchased a Pillar to Post franchise that does home inspections. The plaintiff's initial payment for the franchise with Pillar and Post was $11,000. He has made monthly payments on the balance of the loan to Pillar and Post since March, 1997, of $514.37. In addition, he has paid $300 monthly or 9 percent of his gross income, whichever is greater. The total amount that he has paid on the combination of the loan payments and royalty payments to date is $7,507.80 plus the initial $11,000 for the franchise down payment. He gets paid approximately $300 for the average home inspection that takes approximately three hours to complete, plus approximately one hour to do the necessary paperwork. He is also doing some substitute teaching for the town of Ridgefield. He gets $30 per day working as a substitute teacher. In 1997, his sources of funds included the following:
(a) January, 1997 — he withdrew $10,000 from Market Works, Inc.
(b) Between November 10, 1996 and April 1, 1997, his church provided the plaintiff with a total of $10,400 in the form of gifts. There were no gifts prior to November 10, 1996. The first gift was in the amount of $400 in 1996. The next was in the amount of $2000. The next two were each in the amount of $4000. In November and December, 1997, the plaintiff received an additional $8000 from his church so that the total amount received by him was $18,400.
(c) Approximately $5300 from his home inspection business. The plaintiff has a life insurance policy with a $2000 cash surrender value that is not shown on his financial affidavit. CT Page 2401
The defendant is forty-five years old and in good health. The defendant has a bachelor of arts in psychology and English. She is presently a partner in Anagram. That business creates advertising and creative services to businesses. There are three partners in the Anagram business. She takes money out of the business based on the amount that is available. The Anagram business is different from the Market Works, Inc. business. The Anagram business started in December of 1996, as a partnership and in July, 1997, was formed as a corporation. Anagram consists of two separate entities, namely, Anagram Partners, LLS and Anagram, Inc. Anagram Partners, LLS has had no activity after July of 1997.
The defendant's gross income from Anagram for 1997, is approximately $98,000. On August 21, 1997, the defendant filed a financial affidavit stating that her gross monthly salary was estimated at $7500 and that her 1997 gross earnings were estimated to be approximately $90,000. The defendant filed a financial affidavit dated December 10, 1997, representing her gross monthly salary to be $4400, and representing that her best estimate was that she would earn approximately $87,000 in 1997. On January 12, 1998, the defendant filed a financial affidavit representing that her gross monthly salary, based on the last fifteen weeks, was $3695, and that her gross income from employment was $88,500 through September 30, 1997, with additional income for the last quarter of 1997 of $9390, or total income from Anagram in 1997 of $97,890.
The parties are in dispute as to what income the court should attribute to each party in entering financial orders. The defendant seeks to have the court consider the plaintiff's earning capacity. The court finds that there is no credible evidence as to what his earning capacity would be in the area of the other fields that he is capable of working and whether such jobs are available, and for those reasons, declines to consider his earning capacity. For the purpose of the financial orders hereinafter entered, the court finds that the plaintiff's net weekly income is $118. The court further finds that the defendant's gross weekly income is $1,882.50, and her net weekly income is $1390.
The court finds that under the child support guidelines that the amount of support that the defendant should pay to the plaintiff is $398 weekly. The court finds that the guidelines are inappropriate and inequitable based on the shared custody order.
ORDERS
1. The defendant is ordered to pay to the plaintiff support in the amount of $200 weekly. CT Page 2402
2. The defendant is ordered to pay to the plaintiff alimony in the amount of $400 weekly.
3. Both the alimony order and the support order are retroactive to August 25, 1997.
4. Full credit is to be given to the defendant for all sums paid to the plaintiff from August 25, 1997 to date.
5. No support is ordered to be paid by the plaintiff to the defendant as the amount of net weekly income of the plaintiff is less than the self-support reserve of $145 per week.
6. In the event the parties are unable to agree as to the amount of any arrearages due to the plaintiff, if any, and how they are to be repaid, then they will have to file a short calendar motion for that purpose.
AXELROD, J.